## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

_____
                            :

TATEVIK KHACHATRYAN,        :
                            :

                Plaintiff,    :

                            :     Civ. Action No. 17-07503-BRM-TJB

        v.            :

                            :

UNITED STATES OF AMERICA, _et al._,  :      **OPINION**

                            :

              Defendant.   :
_____:

**MARTINOTTI, DISTRICT JUDGE**

Before this Court is Defendant United States, Rex W. Tillerson, and Secretary of the Department of State's ("Defendants")[1] Motion to Dismiss (ECF No. 6) Plaintiff Tatevik Khachatryan's ("Tatevik") Complaint (ECF No. 1) pursuant to Federal Rules of Civil Procedure 12(b)(1) and (b)(6). Tatevik opposes the Motion. (ECF No. 8.) Having reviewed the parties' submissions filed in connection with the Motion and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure 78(b), for the reasons set forth below, and for good cause shown, Defendants' Motion to Dismiss is **GRANTED.**

---

[1] Defendant is sued in its official capacity via service on the Honorable Jefferson Sessions, Attorney General of the United States and Rex W. Tillerson, Secretary of the United States Department of State. As of March 13, 2018, Rex Tillerson no longer serves as the United States Secretary of State, being replaced by Mike Pompeo.

## I. BACKGROUND

### A. The Visa Denial

Aram Khachatryan ("Aram")[2] is Tatevik's father and an Armenian citizen who applied for an immigrant visa to the United States. (ECF No. 1 ¶ 14.) Tatevik is a United States citizen. (*Id.* ¶ 13.) Sometime after Tatevik became a citizen, she filed an I-130 visa petition on Aram's behalf. The U.S. Citizenship & Immigration Services ("USCIS") approved that petition, which allowed Aram to apply for an immigrant visa. (*Id.* ¶ 16.) After Aram applied for the immigrant visa, however, the U.S. Embassy denied him a visa under the Immigration and Nationality Act ("INA") § 212(a)(6)(C)(i), 8 U.S.C.A. § 1182. (*Id.* ¶ 18.)[3] The grounds for inadmissibility arise "within the context of Aram['s] first and second [attempted] entry/entries into the United States." (*Id.* ¶ 19.)

Aram originally entered the United States with a B2 tourist visa in 1996 but admittedly overstayed that visa. (*Id.*; ECF No. 1-1 at 5.) On April 25, 2001, Aram attempted to reenter the United States on a tourist visa but was refused entry at the airport. (ECF No. 1 ¶ 20.) U.S. Customs and Border Protection ("CBP") revoked his nonimmigrant visa and he was removed under § 235(b)(1) "because he had previously overstayed in the United States." (*Id.* ¶¶ 20-21.)

### B. The U.S. Embassy's Inadmissibility Determination

Tatevik argues the U.S. Embassy's denial of Aram's immigrant visa "denoted that he was inadmissible under INA § 212(a)(6)(C)(i), however, no factual basis with respect to same was provided." (*Id.* ¶ 22.) Therefore, Tatevik requested that the U.S. Embassy provide it with a factual basis. (*Id.* ¶ 23.) In email correspondence, the U.S. Embassy stated:

---

[2] The Court means no disrespect to the parties but refers to them by their first name for clarity.

[3] INA § 212(a)(6)(C)(i), 8 U.S.C.A. § 1182 states, "Any alien who, by fraud or willfully misrepresenting a material fact, seeks to procure (or has sought to procure or has procured) a visa, other documentation, or admission into the United States or other benefit provided under this chapter is inadmissible."

> Factual basis pertaining to the refusal of [Aram] serves the fact that when [Aram] arrived in the United States in 2001, the U.S. Immigration and Naturalization Service determined that he had willfully misrepresented his past activities in the U.S. when procuring his tourist visa. INS entered a 212(a)(6)(C)(1) ineligibility at that time.

(ECF No. 1-1 at 20.) Tatevik also filed a Freedom of Information Act ("FOIA") with CBP. (*Id.* ¶ 24.) The FOIA response included a transcript of Aram's sworn statement, taken on April 25, 2001, when he attempted to reenter, as well as an electronically generated Record of Deportable/Inadmissible Alien. (*Id.*) The Record of Deportable/Inadmissible Alien stated Aram confirmed overstaying his visa and "admitted to working [in the United States]." (ECF No. 1-1 at 18.) Nonetheless, Tatevik continually attempted to retrieve an answer from the U.S. Embassy with respect to the factual basis for denial of the visa. On May 29, 2017, the U.S. Embassy reiterated:

> Immigration and Customs Enforcement (ICE) entered an ineligibility for your father under INA 212(a)(6)(C)(1) on April 25, 2001. According to our records, ICE determined that he had on a previous trip willfully misrepresented his intentions by seeking entry as a visitor for pleasure and subsequently working in the United States without the permission of Immigration and Naturalization Services (INS).

(*Id.* at 28.)

### C. Procedural History

On September 9, 2017, Tatevik filed her Complaint for Declaratory Judgment, requesting the Court to enter declaratory judgment on her behalf and to order Defendants to direct their "agents to promptly issue an immigrant visa" as to Aram. (ECF No. 1 at 6.) On December 21, 2017, Defendants filed their Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), arguing the Consular Nonreviewability Doctrine precludes the challenge being brought by Tatevik. (ECF No. 6-1.) On January 19, 2018, Tatevik opposed the Motion. (ECF No. 8.)

## II.    LEGAL STANDARDS

### A.  Federal Rule of Civil Procedure 12(b)(1)

When a defendant moves to dismiss a claim for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), the court must determine whether defendant is making a "facial or factual challenge to the court's subject matter jurisdiction." *Gould Elecs., Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000); *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). Under a facial attack, the movant challenges the legal sufficiency of the claim, and the court considers only "the allegations of the complaint and documents referenced therein and attached thereto in the light most favorable to the plaintiff." *Gould Elecs.*, 220 F.3d at 176; *Mortensen*, 549 F.2d at 891 ("The facial attack does offer similar safeguards to the plaintiff [as a 12(b)(6) motion]: the court must consider the allegations of the complaint as true."). The Court "may dismiss the complaint only if it appears to a certainty that the plaintiff will not be able to assert a colorable claim of subject matter jurisdiction." *D.G. v. Somerset Hills Sch. Dist.*, 559 F. Supp. 2d 484, 491 (D.N.J. 2008) (citing *Cardio–Medical Assoc., Ltd. v. Crozer–Chester Med. Ctr.*, 721 F.2d 68, 75 (3d Cir. 1983)).

Under a factual attack, however, the challenge is to the trial court's "very power to hear the case." *Mortensen*, 549 F.2d at 891. Thus:

> [T]here is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.

*Id.* Moreover, in a factual attack, "the court may consider and weigh evidence outside the pleadings to determine if it has jurisdiction." *Gould Elecs.*, 220 F.3d at 178.

Regardless of the analysis, the plaintiff bears the burden of demonstrating the existence of subject matter jurisdiction. *See McCann v. Newman Irrevocable Tr.*, 458 F.3d 281, 286 (3d Cir. 2006); *Lightfoot v. United States*, 564 F.3d 625, 627 (3d Cir. 2009) (citing *Carpet Grp. Int'l v. Oriental Rug Importers Ass'n*, 227 F.3d 62, 69 (3d Cir. 2000)).

Here, Defendants are asserting a facial 12(b)(1) challenge, asserting Tatevik's attack on the U.S. Embassy's decision is not reviewable by this Court.

**B. Federal Rule of Civil Procedure 12(b)(6)**

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences in the facts alleged in the light most favorable to the [plaintiff]." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). "[A] complaint attacked by a . . . motion to dismiss does not need detailed factual allegations." *Bell Atl. v. Twombly*, 550 U.S. 544, 555 (2007). However, the plaintiff's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286. Instead, assuming the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for misconduct alleged." *Id.* This "plausibility standard" requires the complaint allege "more

than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a 'probability requirement.'" *Id.* (citing *Twombly*, 550 U.S. at 556). "Detailed factual allegations" are not required, but "more than an unadorned, the defendant-harmed-me accusation" must be pled; it must include "factual enhancements" and not just conclusory statements or a recitation of the elements of a cause of action. *Id.* (citing *Twombly*, 550 U.S. at 555, 557).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

While, as a general rule, a court many not consider anything beyond the four corners of the complaint on a motion to dismiss pursuant to 12(b)(6), the Third Circuit has held "a court may consider certain narrowly defined types of material without converting the motion to dismiss [to one for summary judgment pursuant under Rule 56]." *In re Rockefeller Ctr. Props. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999). Specifically, courts may consider any "document *integral to or explicitly relied upon* in the complaint." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1426.

## III.    DECISION

The line between jurisdiction and the merits is thin here but makes no practical difference. *Matushkina v. Nielsen*, 877 F.3d 289, 297 (7th Cir. 2017). Tatevik is challenging the visa denial for two reasons: (1) "the U.S. Embassy's decision is facially illegitimate and is not bona fide;" and (2) because her constitutional rights are allegedly implicated. (ECF No. 8 at 1.) Specifically, she claims the U.S. Embassy's decision "is facially illegitimate and is not bone fide because their

decision with respect to Aram['s] intent on a visit to the United States in 1996 is contrived, imputed, unsupported by the evidence, arbitrary, and capricious." (*Id.* at 1-2.) Tatevik asserts "INS agents did not determine that Aram [] misrepresented his intent on a previous visit, rather INS agents determined that Aram [] had previously overstayed the time he was authorized to remain in the United States with respect to a previous visit." (*Id.* at 2.) She alleges, pursuant to her constitutional right as a United States citizen, she "has the right to be reunited with her father in the United States." (*Id.* at 3.)

Defendants argue the Court lacks jurisdiction to review the decision of a consular official to deny a visa. (ECF No. 6-1 at 8-9.) They further contend Tatevik's alleged right to be reunited with her father "is highly questionable at best." (ECF No. 9 at 3.)

"[T]he power to exclude aliens is inherent in sovereignty, necessary for maintaining normal international relations and defending the country against foreign encroachments and dangers-a power to be exercised exclusively by the political branches of government." *Kleindienst v. Mandel*, 408 U.S. 753, 765 (1972) (citation omitted). It is well-settled that the decision of a consular to grant or deny a visa is not subject to judicial review. *Onuchukwu v. Clinton*, No. 10-1490, 2010 WL 3614217, at *2 (D.N.J. Sept. 7, 2010), *aff'd*, 408 F. App'x 558 (3d Cir. 2010); *see Am. Acad. of Religion v. Napolitano*, 573 F.3d 115, 123 (2d Cir. 2009); *De Castro v. Fairman*, 164 F. App'x 930, 932 (11th Cir. 2006); *Ahmed v. Dep't of Homeland Sec.*, 328 F.3d 383, 388 (7th Cir. 2003); *Saavedra Bruno v. Albright*, 197 F.3d 1153, 1159 (D.C. Cir. 1999); *Doan v. INS*, 160 F.3d 508, 509 (8th Cir. 1999); *Centeno v. Shultz*, 817 F.2d 1212, 1213-14 (5th Cir. 1987) (per curiam); *Ventura-Escamilla v. INS*, 647 F.2d 28, 30 (9th Cir. 1981); *Burrafato v. U.S. Dep't of State*, 523 F.2d 554, 556-57 (2d Cir. 1975); *Sabataityte v. Powell*, No. 04-4130, 2004 WL 2203708, at *2 (E.D. Pa. 2004) ("Federal Courts do not have jurisdiction to review judgments regarding alien

admissibility made by Executive Branch Officers outside the United States."). This principle is known as the Doctrine of Consular Nonreviewability. *Am. Acad. of Religion*, 573 F.3d at 123.

However, there are two exceptions to the Doctrine of Consular Nonreviewability. *Matushkina*, 877 F.3d at 294; *see Mandel*, 408 U.S. at 770. First, the Court "may conduct a limited review to determine whether a visa was denied for a bona fide and facially legitimate reason." *Matushkina*, 877 F.3d at 294. During this limited review, the Court does not "look to see whether a consular official properly construed and applied relevant provisions of law." *Hazama v. Tillerson*, 851 F.3d 706, 709 (7th Cir. 2017) (rejecting suggestion of amicus curiae to "adopt a rule under which we would examine whether the officer 'properly construed and applied' the relevant provisions of law"). Instead, the Court should "look at the face of the decision, see if the officer cited a proper ground under the statute, and ensure that no other applicable constitutional limitations are violated. Once that is done, if the undisputed record includes facts that would support that ground, our task is over." *Id.* Second, the Court may review the consular's decision "where a denial of an alien's application affects a U.S. citizen's constitutional rights." *Matushkina*, 877 F.3d at 294.

Here, Tatevik is directly attacking the U.S. Embassy's denial of her father's visa. (*See* ECF No. 8 at 1 ("The Plaintiff's challenge to the instant visa denial should not be precluded and the Court should find that it maintains subject matter jurisdiction because the U.S. Embassy's decision is facially illegitimate and is not bona fide.") This is precisely what the Doctrine of Nonreviewability proscribes; a decision of a consular to grant or deny a visa is not subject to judicial review.

Tatevik argues the evidentiary record does not explicitly show INS agents determined Aram misrepresented his intent in coming to the United States in 1996, only that he had overstayed

his tourist visa in 1996. (ECF No. 8 at 2.) Therefore, according to Tatevik, it stands to reason that Aram's intent was improperly imputed by the United States Embassy and that the findings made by embassy officials were illegitimate and not bona fide. (*Id.*)

However, it has been determined that courts:

> cannot review a consular officer's decision even upon allegations that the consular officer acted on erroneous information, *see Loza–Bedova v. Immigration and Naturalization Serv.*, 410 F.2d 343 (9th Cir. 1969), that the INA did not authorize the officer's decisions, *see Centeno*, 817 F.2d at 1213, that the officer erroneously interpreted and applied the INA, *see Grullon v. Kissinger*, 417 F. Supp. 337 (E.D.N.Y.1976), *aff'd*, 559 F.2d 1203 (2d Cir. 1977), or that the State Department failed to follow its own regulations. *Burrafato*, 523 F.2d at 557.

*Garcia v. Baker*, 765 F. Supp. 426, 428 (N.D. Ill. 1990). "As long as the State Department considers the merits of an application for an immigrant visa, this Court may not alter or even review the Department's decision." *Onuchukwu,* 2010 WL 3614217, at *2; *see e.g.*, *Elhabash v. U.S. Dep't of State*, No. 09-5847, 2010 WL 1742116, at *2 (D.N.J., 2010); *Hossain v. Rice*, 2008 WL 3852157, at *2 (E.D.N.Y., 2008); *Sabataityte*, 2004 WL 2203708, at *2; *Centeno*, 817 F.2d at 1213. Even if the decision was made erroneously, this Court lacks jurisdiction to review it." *Onuchukwu,* 2010 WL 3614217, at *2.

The Court finds the United States Embassy relied upon a legitimate and bona fide factual basis for denying Aram's visa. The United States Embassy considered the merits of Aram's application for a visa and cited the fraud and misrepresentation statute as the basis for denial, and the Record of Deportable/Inadmissible Alien confirmed Aram overstayed his visa and at least "admitted to working [in the United States]." (ECF No. 1-1 at 18.) Moreover, ICE entered an ineligibility for Aram under INA 212(a)(6)(C)(1) on April 25, 2001, determining "that he had on a previous trip willfully misrepresented his intentions by seeking entry as a visitor for pleasure and

subsequently working in the United States without the permission of [INS]." (*Id.* at 28.) Lastly, the United States Embassy proffered such reason to Tatevik via email. (ECF No. 1-1 at 28.) Accordingly, the Court finds the visa was denied for a bona fide and facially legitimate reason.

To the extent Tatevik also challenges the INS's findings made concerning her father in 2001, "[c]ourts have applied the [D]octrine of [C]onsular Nonreviewability even to suits where a plaintiff seeks to challenge a visa decision indirectly." *Matushkina*, 877 F.3d at 295; *see Malyutin v. Rice*, 677 F. Supp. 2d 43, 46 (D.D.C. 2009) (applying doctrine to theory that visa denial obstructed plaintiff's access to state court because "the doctrine also applies where a plaintiff attempts to circumvent the doctrine by claiming [that] he is not seeking a review of the consular officer's decision, but is challenging some other, related aspect of the decision"), *aff'd*, No. 10-5015, 2010 WL 2710451 (D.C. Cir. July 6, 2010); *Al Makaaseb Gen. Trading Co. v. Christopher*, No. 94-1179, 1995 WL 110117, at *3 (S.D.N.Y. Mar. 13, 1995) (rejecting challenge to inclusion of visa applicant on lookout list because "such a challenge cannot be divorced from an attack of the decision itself"). As such, this naked attempt to reverse the Embassy's decision fails.

The Court will now turn to Tatevik's constitutionality argument. Indeed, the Court may review the consular's decision "where a denial of an alien's application affects a U.S. citizen's constitutional rights." *Matushkina*, 877 F.3d at 294. This exception has its origins in *Mandel*, a case brought by United States citizens who challenged on First Amendment grounds the denial of a Belgian citizen who advocated for "world communism." 408 U.S. at 753. In that case, the Supreme Court reiterated that "an unadmitted and nonresident alien . . . ha[s] no constitutional right of entry to this country as a nonimmigrant or otherwise." *Id.* at 762. Nevertheless, the Supreme Court indicated that limited review of a consular's decision to deny a visa may be allowed where the decision implicates the constitutional rights of a United States citizen. *Id.* at 769–70.

However, even if constitutional rights were implicated, a court's review is limited. *Id.* at 770 ("[W]hen the Executive exercises this power negatively on the basis of a facially legitimate and bona fide reason, the courts will neither look behind the exercise of that discretion, nor test it by balancing its justification against the First Amendment interests of those who seek personal communication with the applicant."); *Ruiz-Herrera v. Holder*, No. 12- 0194, 2013 WL 1136849, at *5 (N.D. Ga. Mar. 15, 2013). "A consulate's decision to deny an immigrant visa will be upheld under *Mandel* as long as the decision is based on a 'facially legitimate and bona fide' reason." *Ruiz-Herrera*, 2013 WL 1136849, at *5.

If it is established that the decision was facially legitimate and bona fide, "courts will neither look behind the exercise of that discretion, nor test it by balancing its justification against' the constitutional interests of citizens the visa denial might implicate." *Kerry v. Din*, 135 S. Ct. 2128, 2140 (2015). This Court joins the First, Second, Ninth, and D.C. Circuits in holding that under *Mandel* and *Kerry*, a United States citizen raising a constitutional challenge to a denial of a visa is entitled to limited judicial inquiry. *Bustamante v. Mukasey*, 531 F.3d 1059, 1062 (9th Cir. 2008). If the United States Embassy's decision is facially legitimate and bona fide the decision will not be disturbed. Because the Court has already concluded the reason was both facially legitimate and bona fide, it need not explore the constitutional challenge. Accordingly, Defendants' Motion to Dismiss is **GRANTED**.

## IV.    CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss is **GRANTED**.


Date: September 27, 2018                  */s/Brian R. Martinotti*
                                          **HON. BRIAN R. MARTINOTTI**
                                          **UNITED STATES DISTRICT JUDGE**